**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JEREMY BATES, derivatively on behalf of the
UNITED STATES OF AMERICA,

          **Plaintiff,**

   v.

DONALD J. TRUMP, in his individual capacity;
PAMELA BONDI, in her individual capacity; and
JEANINE F. PIRRO, in her individual capacity,

          **Defendants,**

  and the

UNITED STATES OF AMERICA,

          **Nominal Defendant.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Civil Action No. 1:26-cv-1328

**Jury Trial Demanded**

**<u>Derivative Complaint</u>**

*Pro se* Plaintiff Jeremy Bates—suing derivatively on behalf of the Nominal Defendant,

the United States of America (the "United States")—alleges as follows:

**Preface—Derivative Action on Behalf of the United States**

1.     This case is a call for change in the law.

2.     Plaintiff asks this Court to apply to the executive officers of the United States

the same standards and remedies that courts often apply to chief executive officers, directors,

and officers of corporations, companies, non-profits, associations, and other entities.

3.     These leaders of private entities are under duties imposed by the common law.

The basic duties that the law imposes are the duties of truth (or candor), care, and loyalty.

4.     These duties of truth, care, and loyalty are called "fiduciary duties."

-1-

-2-

5. And in the business world, the law allows a corporation to sue its officers for breaching fiduciary duties that they owe to the corporation. If the officers of a corporation lie, or if the officers fail to act diligently on behalf of the corporation, or if the officers put their own interests ahead of the corporation's interests, then the corporation may sue the officers.

6. Moreover, if a corporation has a claim for breach of fiduciary duty against its officers, and yet the corporation fails to sue the officers on the claim, then the corporation's stakeholders—its shareholders—have a remedy.

7. The stakeholder remedy in such cases is called a "derivative action."

8. The derivative action allows a shareholder to sue officers who have breached duties to a corporation. The shareholder sues derivatively, on behalf of the corporation, and enables the corporation to recover the damages that its own officers caused it to suffer.

9. In the business world, these principles are firmly established. Derivative actions for breach of fiduciary duty are universally recognized in American corporate law. Such actions are litigated in business courts throughout the country.

10. This Complaint, however, tests whether these familiar principles, often applied to private entities, should now apply to the United States Government.

11. To take, as an example, a constitutional Office of Trust: The chief executive officer of the United States is its president.

12. As the Nation's chief executive, a president owes, and should be held to owe, duties to the United States—the same common-law, fiduciary duties of truth, care, and loyalty that many thousands of American citizens owe to the private entities that they lead.

13.     And if a president violates these fiduciary duties to the United States, then the United States ought to be able to sue its chief executive officer and recover damages.

14.     Moreover, if the United States itself will not sue a president for breach of duty, then the Nation's stakeholders—its citizen-taxpayers—ought to have the remedy of suing the president derivatively, on behalf of the United States, to recover the damages it has suffered.

15.     Along the same lines, the Nation's stakeholders should also be able to sue the Nation's lawyers derivatively, on behalf of the United States, if and when those lawyers commit legal malpractice or other misconduct that damages their true client, the United States.

16.     This action is an attempt to activate these principles.  The basic concepts of derivative standing, fiduciary duty, and lawyer liability that apply in the private sector should now extend to executive officers of the United States and to lawyers for the United States.

17.     And to whatever extent any judicial precedent might require a different result, any such judge-made law should now change.

### Introduction—Nature of These Derivative Claims

18.     This case is about breaches of duty and legal malpractice at the pinnacle of the Executive Branch of the United States.  When entrusted with high offices and extensive powers, Defendants breached their duties to the United States and to the American People.

19.     All three Defendants—Donald J. Trump ("Trump"), Pamela Bondi ("Bondi"), and Jeanine Pirro ("Pirro")—hold or held executive offices of the United States.

20.     Defendant Trump is the current President of the United States.

21.     Until recently, Defendant Bondi was the Attorney General of the United States.

22.     Defendant Pirro is the United States Attorney for this District.

23.     So in constitutional terms, Defendants Trump, Bondi, and Pirro have all held offices of trust, honor, and profit under the United States.  Before entering into the duties of the offices, Defendants Trump, Bondi, and Pirro swore oaths of loyalty to the United States.

24.     As officers of the United States, Defendants were fiduciaries.  At all relevant times, Defendants owed fiduciary duties to the United States and to the American People.

25.     Defendants Bondi and Pirro are also lawyers.  As lawyers employed by the United States, Bondi and Pirro owed duties to their true client, the United States.

26.     Unfortunately, Defendants breached their fiduciary and professional duties on many occasions and in many ways.  To allege those breaches in their entirety, however, would stretch the limits of concise pleading.  So this case focuses on one flagrant pattern: Defendants' misuse of the United States Department of Justice ("DOJ").

27.     DOJ was created by the Congress of the United States after the Civil War in order to advance the interests of the American people—in particular, to establish justice.

28.     Defendants view DOJ, however, as Defendant Trump's personal law firm.

29.     And on that (false) view, Defendants have engaged in blatant fiduciary and professional misconduct.  For present purposes, three examples of their misconduct suffice.

30.     *First*, Defendants Trump and Bondi misused DOJ to cover up Volume Two of Special Counsel Jack Smith's report ("Volume Two") on alleged crimes by Trump.

31.     Volume Two details an investigation into Defendant Trump's violations of the Espionage Act by keeping classified documents.

32.     The American People paid for Volume Two and the investigation it describes.

33.     There is no basis in law not to disclose Volume Two to Congress.

-5-

34.     There is also no basis in law not to disclose an appropriately redacted version of Volume Two to the American People.

35.     In covering up Volume Two, Defendants Trump and Bondi did not serve the interests of the United States or of the American People.  Instead, Defendants Trump and Bondi misused DOJ to serve the private, personal interests of Defendant Trump.

36.     To act in Trump's personal interests, rather than the interests of the United States, was a breach of Trump's fiduciary duty and legal malpractice by Defendant Bondi.

37.     *Second*, all three Defendants have abused DOJ's prosecutorial power to try to bring revenge prosecutions against American citizens whom Trump perceives as his enemies.

38.     DOJ reportedly tried to prosecute six Members of Congress.  All that the Members of Congress had done was to release a video urging United States service members to refuse to obey illegal orders.  The video was speech, protected by the First Amendment.

39.     Even so, under the supervision of Defendants Bondi and Pirro, using executive power entrusted to them and to Defendant Trump, and at Trump's vehement encouragement, DOJ tried to persuade a grand jury to indict the six Democratic Members of Congress for engaging in constitutionally protected speech.

40.     The American citizens on the grand jury, however, reportedly refused.

41.     Even so, that failed prosecution resembled DOJ's revenge-prosecution efforts against others—for instance former FBI Director James Comey, former CIA Director John Brennan, and the current Attorney General of the State of New York, Letitia James.

42.     DOJ's actions against Defendant Trump's personal enemies constituted a breach of fiduciary duty by Trump and legal malpractice by Bondi and Pirro.

43. *Third*, all Defendants misused DOJ to pressure the Federal Reserve System into lowering interest rates. This pressure campaign took place with Defendant Trump's encouragement. It also took place while DOJ was supervised by Defendant Bondi.

44. As part of that pressure campaign, the Office of the United States Attorney for this District ("USAO-DC," headed by Defendant Pirro) issued subpoenas to the Board of Governors of the Federal Reserve System (the "Board" of the "Federal Reserve").

45. USAO-DC did not issue those subpoenas, however, for any proper purpose.

46. Rather, as the Chief Judge of this Court determined, "the subpoenas' dominant (if not sole) purpose [wa]s to harass and pressure" the Chair of the Federal Reserve Board "either to yield to the President or to resign and make way for a Fed Chair who will."

47. The Court therefore quashed DOJ's harassive subpoenas.

48. In these ways—by improperly covering up Volume Two of the Smith report, by lawlessly trying to indict Members of Congress for constitutionally protected speech, and by improperly subpoenaing the Federal Reserve on pretextual grounds—Defendants have breached their fiduciary or lawyerly duties to the United States and to the American People.

49. Yet DOJ will not vindicate the interests of the United States and its People. DOJ will not sue Defendant Trump, the President; or Defendant Bondi, until recently the Attorney General; or Defendant Pirro, the United States Attorney for the District of Columbia.

50. Therefore Bates brings this action derivatively, on behalf of the United States, so as to protect the United States by suing those who have failed to sue themselves.

**Parties**

51.     Bates, the derivative Plaintiff, was born in the United States and therefore is a citizen of the United States.  At all relevant times, Bates resided in the State of New York.

52.     Years ago, Plaintiff Bates duly registered for the Selective Service System.

53.     In 2025, Plaintiff paid the U.S. Treasury tens of thousands of dollars in taxes.

54.     As well as being a citizen-taxpayer, Bates is an attorney and counselor-at-law admitted to practice in the Courts of the State of New York and in this Court.

55.     Defendant Trump is the President of the United States of America, having been elected to that Office of Trust in November 2024.  Defendant Trump swore an oath of office on January 20, 2025.

56.     Defendant Bondi served as the Attorney General of the United States from February 2025 to April 2026.  Defendant Bondi swore an oath of office on February 5, 2025.

57.     Defendant Pirro is the United States Attorney for this District.  On information and belief, in May 2025 Defendant Pirro swore an oath of office that was administered by Defendant Bondi in the Oval Office, with Defendant Trump present.

58.     The United States is named a Nominal Defendant because, in a derivative action, the entity that owns the claim (but will not bring it) is properly joined in this way.

**Jurisdiction**

59.     This Court has jurisdiction of this action under 28 U.S.C. § 1331 because this action presents federal questions.

60.     The Court has jurisdiction of this action under 28 U.S.C. § 1345 because Plaintiff is suing derivatively on behalf of the United States—which would be the plaintiff, were it not for certain facts alleged below (*see* "Demand Futility," *infra*).

61.     The Court may also have jurisdiction of this action under 28 U.S.C. § 1346, because this action names the United States as a Nominal Defendant, which in a derivative action is the proper way to join the entity that owns the claims but has failed to bring them.

62.     The Court may also have jurisdiction of this action under 28 U.S.C. § 1349, because the United States and the Department of Justice are organized under federal law.

### Venue

63.     Venue is proper here under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

### Facts

64.     A complete description of Defendants' failures to fulfill their fiduciary and lawyerly duties to the United States might consume thousands of pages.

65.     For the sake of brevity, and to focus this case on the necessary changes in law, this Complaint focuses on three examples of Defendants' fiduciary and lawyerly misconduct.

#### *Cover-Up of Volume Two*

66.     In 2023, Defendant Trump and associate Walt Nauta were indicted by a grand jury of American citizens.  The original indictment, which was unsealed on June 9, 2023, contained 37 counts against Defendant Trump, including 31 counts of willfully retaining national defense information in violation of the Espionage Act.

67.     A superseding indictment was filed on July 27, 2023 (the "Superseding Indictment"). The Superseding Indictment named a third defendant, Carlos de Oliveira.

68.     The Superseding Indictment contained 32 criminal counts against Defendant Trump for "Willful Retention of National Defense Information (18 U.S.C. § 793(e))."

69.     The Superseding Indictment also charged Trump with the following offenses:

a.  "Conspiracy to Obstruct Justice (18 U.S.C. § 1512(k))" (Count 33);

b.  "Withholding a Document or Record (18 U.S.C. §§ 1512(b)(2)(A), 2))" (Count 34);

c.  "Corruptly Concealing a Document or Record (18 U.S.C. §§ 1512(c)(1), 2)" (Count 35);

d.  "Concealing a Document in a Federal Investigation (18 U.S.C. §§ 1519, 2) (Count 36);

e.  "Scheme to Conceal (18 U.S.C. §§ 1001(a)(1), 2)" (Count 37);

f.  "False Statements and Representations (18 U.S.C. §§ 1001(a)(2), 2)" (Count 38);

g.  "Altering, Destroying, Mutilating, or Concealing an Object (18 U.S.C. §§ 1512(b)(2)(B), 2)" (Count 40); and

h.  "Corruptly Altering, Destroying, Mutilating, or Concealing a Document, Record, or Other Object (18 U.S.C. §§ 1512(c)(1), 2)" (Count 41).

70.     The Superseding Indictment is attached hereto as Exhibit A.

71.    On information and belief, the Superseding Indictment's allegations against Defendant Trump and his co-defendants met the standard of probable cause.

72.    Nevertheless, after Defendant Trump was re-elected President in November 2024, DOJ dismissed the entire indictment against him, including DOJ's own allegations that Trump had violated the Espionage Act not once, but 32 times.

73.    On information and belief, DOJ dismissed the indictment of Trump because DOJ has a policy against criminally prosecuting the President of the United States.

74.    On information and belief, in early 2025, Defendant Trump (having become President) caused or allowed DOJ to dismiss the criminal case against his co-defendants.

75.    Even so, the criminal indictment of Defendant Trump was supported by damning evidence, much of which (on information and belief) is described in Volume Two.

76.    On information and belief, Defendant Trump and Defendant Bondi (who was sworn in as Attorney General of the United States in February 2025) have acted deliberately to suppress Volume Two of Special Counsel Jack Smith's report.

77.    Defendant Trump moved to enjoin DOJ from releasing Volume Two.  That injunction is now being appealed to the U.S. Court of Appeals for the Eleventh Circuit.

78.    Defendant Bondi similarly determined that Volume Two should not be released and has repeatedly refused to release it to Congress.

79.    But in March 2026, the Ranking Member of the House Judiciary Committee, Congressman Jamie Raskin, wrote Defendant Bondi a letter in which Raskin made public new information about the Espionage Act investigation of Defendant Trump.  This letter is attached hereto as Exhibit B, along with earlier House letters to Bondi about Volume Two.

80.    According to Congressman Raskin, in 2023 the Special Counsel's team believed that Defendant Trump's motive for illegally taking, and then keeping, classified documents was that the documents were "pertinent to" Trump's "business interests."

81.    If that belief was accurate, then Defendant Trump broke the criminal laws of the United States more than 30 times in order to make money for himself.

82.    If Volume Two sheds light on the classified documents that Trump stole, and on why he stole them, then Volume Two contains material information of critical importance.

83.    Because Defendant Trump is President, the American People need to know the facts about whether Defendant Trump can or cannot be trusted with classified information.

84.    Volume Two may also contain facts that will enable the stakeholders in the United States—the American People—to determine whether Defendant Trump should be impeached and removed from office, and to instruct their Members of Congress accordingly.

***Revenge Prosecutions***

85.    In addition to using DOJ to cover up Defendant Trump's alleged crimes, Defendants have also abused DOJ's prosecutorial power so as wrongfully to target people whom Trump personally resents or whom Trump maliciously seeks to pressure.

86.    One such abuse of DOJ's prosecutorial power began on November 19, 2025, when six Democratic Members of Congress publicly released a video in which they urged United States service members not to obey illegal orders.

87.    In urging that United States service members refuse to obey illegal orders, the Democratic Members of Congress themselves did nothing illegal or unlawful.

88.     For Article 92 of the Uniform Code of Military Justice only requires service members to obey *lawful* orders.  That provision provides for punishment by a court-martial if a service member "violates or fails to obey any lawful general order or regulation" or if the service member has knowledge of, or is under a duty to obey, and fails to obey, a *lawful* order.

89.     The video by the Democratic Members of Congress was political speech. Their video was protected not only by the First Amendment to the United States Constitution, but also by the Speech and Debate Clause, which protects Members of Congress specifically.

90.     Trump, however, reacted viciously.  First, on November 20, 2025, and using social media, he called for the six Members of Congress to be "arrested and put on trial":

> It's called SEDITIOUS BEHAVIOR AT THE HIGHEST LEVEL. Each one of these traitors to our Country should be ARRESTED AND PUT ON TRIAL. Their words cannot be allowed to stand - We won't have a Country anymore!!! An example MUST BE SET. President DJT

91.     Next, Trump broadcast this:  "SEDITIOUS BEHAVIOR FROM TRAITORS!!! LOCK THEM UP??? President DJT."

92.     The same morning, again on social media, Defendant Trump advanced the (false) notion that the video was "SEDITIOUS BEHAVIOR, punishable by DEATH!"

93.     After Trump publicly announced on social media his executive commands (which also amounted to incitement of stochastic terrorism), DOJ attempted to prosecute the six Democratic Members of Congress.

94.     On information and belief, then–Attorney General Bondi knew or should have known about DOJ's attempt to prosecute six Democratic Members of Congress.

95.     Yet Defendant Bondi did not prevent DOJ from attempting to prosecute six Democratic Members of Congress for engaging in constitutionally protected speech.

-12-

96. And Defendant Pirro, as United States Attorney for the District of Columbia, supervised the attempt to obtain an indictment of the six Democratic Members of Congress.

97. Indeed, according to press reports, it was two lawyers close to Pirro who tried to obtain the indictment. Bloomberg Law described those two lawyers as having been "brought into Pirro's inner circle" at USAO-DC in 2025.

98. A grand jury of American citizens, however, reportedly rejected Defendants' attempt to prosecute six Democratic Members of Congress for urging United States service members to refuse to obey illegal orders. The grand jury reportedly returned no true bill.

99. But in the course of Defendants' attempt to prosecute Members of Congress, the United States and the American People were harmed. The United States and the American People were harmed by Defendants' faithless politicization of DOJ and by Defendants' flagrant violations of the United States Constitution.

100. The effect of Defendants' misconduct was to chill debate over whether United States service members may lawfully refuse to obey illegal orders.

101. Defendants' breaches of fiduciary and lawyerly duty to the United States and the American People have borne bitter fruit.

102. Since then, United States service members have carried out Defendant Trump's lawless orders to murder people off the coast of South America by bombing small boats.

103. Service members also seem not to have questioned Defendant Trump's orders to attack Iranian targets without any basis in international law or the law of nations.

104. In Iran, on information and belief, service members committed war crimes, including bombing a school and killing more than 165 schoolgirls.

***Campaign To Pressure the Federal Reserve***

105.    Another attempted abuse of DOJ's prosecutorial power came to light in March.

106.    Perhaps expecting to launch a Persian Gulf war that would drive up oil prices, Defendant Trump unlawfully sought to defeat the independence of the Federal Reserve Board by pressuring the Board and its Chair, Jerome Powell.

107.    As the Chief Judge of this Court has described, Trump's public pressure campaign against the Federal Reserve goes back to 2019 at least.  *See* Mem. Op. at 1–6, ECF No. 23, *In re Grand Jury Subpoenas*, No. 26-12 (D.D.C. March 13, 2026) (Boasberg, C.J.) (attached hereto as Exhibit C, along with Order denying DOJ's request for reconsideration).

108.    On or around January 9, 2026, DOJ reportedly served grand-jury subpoenas that ostensibly related to a purported criminal investigation into Powell's testimony before the Senate Banking Committee in June 2025.

109.    On January 11, 2026, Powell released a statement in which he described the subpoenas' ostensible purpose as a pretext.  "The threat of criminal charges," Powell stated, "is a consequence of the Federal Reserve setting interest rates based on our best assessment of what will serve the public, rather than following the preferences of the President."

110.    The Federal Reserve Board moved this Court to quash the subpoenas.

111.    The Chief Judge of this Court noted that monetary policy poses a tradeoff, because "lower [interest] rates can trigger a quick boom, while the inflation that they spur often does not fully kick in until later."  Mem. Op. at 3, *In re Grand Jury Subpoenas* (Ex. C).

-14-

112.    "These short-term benefits and long-term costs" the Chief Judge wrote, "create a conflict between what is best for incumbent politicians and what is best for the nation's long-term economic stability." *Id*.

113.    The Court described how, to manage this conflict between the national interest and incumbent politicians' interests, Congress entrusted rate-setting not to the President, but to the Federal Reserve.

114.    Congress also enacted statutory provisions that shield the Federal Reserve from political pressure.

115.    The Court found that DOJ's subpoenas were instruments of improper pressure.

116.    According to the Court, "the subpoenas' dominant (if not sole) purpose [wa]s to harass and pressure Powell," as Chair of the independent Federal Reserve Board, "either to yield to the President or to resign and make way for a Fed Chair who will."

117.    The Court held that DOJ's "asserted justifications for these subpoenas are mere pretexts." The Court therefore quashed the subpoenas.

118.    DOJ sought reconsideration of the quashal.

119.    But in seeking reconsideration, DOJ also failed to present any new evidence.

120.    Therefore the Court adhered to its prior determination that DOJ's justifications were pretexts and that the subpoenas were improper.

121.    Even so, Defendants' attempt to use prosecutorial power to pressure the Federal Reserve to lower interest rates constituted yet another flagrant breach of Defendants' fiduciary and lawyerly duties to the United States and to the American People.

**Damages**

122.    To compensate for Defendants' breaches of duty and legal malpractice, Plaintiff demands several types of damages for the United States.

123.    First, disgorgement and restitution.  The United States has provided Defendants with salaries and compensation and other benefits.  The United States provided these things on the reasonable expectation that Defendants would be faithful servants of the United States and would be careful, diligent, unconflicted lawyers.

124.    Yet all Defendants have proven to be faithless servants.  And as lawyers, Defendants Bondi and Pirro have proven to be careless, neglectful, and conflicted.

125.    Therefore all Defendants should pay for their misconduct by disgorging, or by making restitution for, all the salaries, compensation, and other benefits that the United States provided to Defendants.

126.    For example, while serving the United States as the Nation's chief executive, Defendant Trump receives the benefit of living in the White House—a 132-room mansion in downtown Washington that includes (or included, when Defendant Trump was inaugurated) its own tennis court, bowling alley, and medical clinic.

127.    On information and belief, the benefit of living rent-free in the Nation's Executive Mansion is worth at least $4 million a year.  The exact value of this benefit will be determined at trial, but it includes security, housekeeping, and catering.

128.    Defendant Trump has also received free travel, which he often uses to take golfing trips that involve Air Force One and expensive security arrangements.

129.    On information and belief, Defendant Trump's golf trips in his second term have cost the United States more than $100 million.  S.V. Date, *Taxpayers' Tab for Donald Trump's Golf Habit Crosses $100 Million*, HuffPost (March 28, 2026) ("President Donald Trump's golf habit has now cost taxpayers at least $101.2 million in travel and security expenses since his return to office.").

130.    As a faithless servant, Defendant Trump should pay for his breaches of duty by disgorging all these taxpayer-funded benefits.

131.    Similarly, the United States paid Defendants Bondi and Pirro annual salaries of approximately $250,000 and $195,000, respectively.

132.    As attorneys who have committed legal malpractice, Defendants Bondi and Pirro should forfeit their legal fees and should repay the United States their salaries received when their malpractice occurred.

133.    Second, consequential and compensatory damages.  Defendants' misconduct has been expensive.  The crimes allegedly committed by Defendant Trump, the cover-up of Volume Two, the revenge prosecutions, and the campaign to pressure the Federal Reserve have all consumed DOJ time and resources that would have been better spent advancing other interests of the United States, as opposed having to investigate and prosecute Trump's alleged crimes or advancing Trump's own personal interests.

134.    The United States should recover from Defendants, in money damages, all the costs that Defendants have wrongfully caused the United States to bear and the resources that Defendants have wrongfully caused the United States to expend.

135.    Moreover, on information and belief, the consequential damages to the United States caused by Defendants' unlawful assault on the independence of the Federal Reserve may total hundreds of millions of dollars, if not more, in marginally higher interest rates that the United States pays on its $38 trillion of federal debt.

136.    Third, reputational damages.  On information and belief, Defendant Trump's breaches of fiduciary duty have caused the United States reputational damages that the United States should now recover.

137.    Fourth, punitive damages.  Defendants' breaches of fiduciary duty and legal malpractice were directed at the public and were criminal, wanton, or grossly reckless. Therefore punitive damages should be awarded to the United States in an amount to be determined at trial.

138.    Punitive damages will serve to punish these Defendants for their failures to carry out their fiduciary and lawyerly duties.

139.    Punitive damages will also serve to deter future fiduciaries of the United States, and future lawyers for the United States, from committing similar breaches of fiduciary duty or similar legal malpractice.

**Statute of Limitations**

140.    The statute of limitations for claims brought by the United States for breach of fiduciary duty or legal malpractice may be as brief as three years.  *See* N.Y. CPLR § 214(4) (place of organization of the United States); D.C. Code § 12-301 (current seat of government).

141.    To whatever extent Plaintiff's allegations might cause any applicable three-year limitations period to be exceeded, the period ought to be tolled (or extended) for three reasons.

142. First, the limitations period for a continuing wrong should not begin to run until the continuing wrong ceases.

143. Second, the limitations period for a fiduciary-duty or legal-malpractice claim does not begin to run until the fiduciary or attorney-client relationship ends.

144. Third, and putting it another way, the limitations period for a claim of breach of fiduciary duty is subject to a fiduciary toll.

### Demand Futility

145. If there be any demand requirement that applies here, then the demand should be excused as futile.

146. An analogue to a demand in a private derivative case might be the expectation that DOJ would act in the interests of its true client and would sue Defendants Trump, Bondi, and Pirro civilly for breach of fiduciary duty and for legal malpractice.

147. But DOJ will not proceed against Defendant Trump criminally or civilly, or against those who aid and abet him, while Defendant Trump is President.

148. Indeed, DOJ has proven itself unwilling or unable to safeguard the Nation's interests when the Nation's interests and the interests of Defendant Trump conflict.

149. So, for example, in Defendant Trump's first term, the then–Attorney General intervened in a criminal-sentencing matter to favor Defendant Trump's personal friend, Roger Stone. Four career prosecutors then withdrew from that case. DOJ later moved to dismiss a federal criminal case against Michael Flynn even after Flynn had pled guilty.

150. Even when Defendant Trump was not president, DOJ failed to advise the United States whether the President of the United States is a fiduciary and owes fiduciary

duties. *See Bates* v. *United States Department of Justice*, No. 1:25-cv-01277-ABJ (D.D.C.) (DOJ moving for summary judgment on ground that it had no document responsive to FOIA request for opinion by Office of Legal Counsel on whether President is a fiduciary).

151.    In Defendant Trump's second term, the pattern of improper intimidation, investigation, and potential prosecution of Trump's perceived enemies has continued.

152.    In July 2025, Trump stated of Comey and Brennan, "I think they're crooked as hell and maybe they have to pay a price for that."

153.    DOJ proceeded to try to prosecute Comey and is now proceeding to investigate Brennan despite the withdrawal of a senior DOJ prosecutor from that investigation.

154.    As if to emphasize whom DOJ must now serve—Defendant Trump—there is a new banner on DOJ's national headquarters, a few blocks away from this Courthouse:



155.    Further proof of demand futility, if any were needed, lies in DOJ's policy of not bringing criminal charges against the President.  That policy is set forth in a 2000 opinion titled, "A Sitting President's Amenability to Indictment and Criminal Prosecution."

156.    If DOJ will not indict or criminally prosecute a sitting president for crimes committed while in office, then *a fortiori* DOJ will not now sue Defendant Trump civilly, for his breaches of fiduciary duty.

157.    For all the foregoing reasons, it would be futile to demand that DOJ, while supervised by persons accountable to Defendant Trump, sue Trump, Bondi, or Pirro.

158.    Additionally, under the United States Constitution, there is an analogue to the ability of a diligent board of directors to remove a corrupt corporate officer.  This analogue is impeachment—the  power of the House of Representatives to impeach, and of the Senate to remove from office, a president who has committed high crimes and misdemeanors.

159.    On this analogy, demands to remove Defendant Trump were made years ago, but were rejected.

160.    In 2020, when the first articles of impeachment reached the United States Senate, the Senate refused even to hear testimony from any witness.

161.    The Senate then failed to convict and remove Defendant Trump from office.

162.    In 2021 the House of Representatives impeached Defendant Trump once again, in response to the January 6 attack on the United States Congress.

163.    Again the Senate failed to convict Defendant Trump.

164.    For all these reasons, any demand requirement should be excused.

165.    Plaintiff brings this case derivatively on behalf of the United States in order to protect the United States (i) by ensuring that its officers will remain loyal to the United States and its interests, will use their powers for proper purposes, will carry out their duties faithfully, and will abide by standards of fiduciary and lawyerly conduct; and (ii) by punishing faithless officers of the United States who have breached their fiduciary duties and neglectful, conflicted lawyers for the United States who have committed legal malpractice.[1]

**First Cause of Action**
Declaratory Judgment Act—28 U.S.C. §§ 2201 and 2202
(Against All Defendants)

166.    Plaintiff repeats and incorporates the allegations of paragraphs 1–165.

167.    There is a substantial and ongoing controversy between the United States and Defendants.

168.    Given Defendants' misconduct, a declaration of rights under the Declaratory Judgment Act is apparently necessary, incredibly enough, to clarify the legal relationships between the United States, on the one hand, and Defendants, on the other.

169.    The Court should declare that Defendant Trump, as President of the United States; Defendant Bondi, as former Attorney General of the United States; and Defendant

---

[1] Disclosure:  On January 19, 2021, Plaintiff sued Trump, then President of the United States, derivatively on behalf of the United States, for breach of fiduciary duty to the United States. *See Bates* v. *Trump*, No. 1:21-cv-02402 (S.D.N.Y.).  That 2021 case did not relate to the Espionage Act case against Trump, which was not publicly known at that time.  That 2021 derivative action was dismissed and the Second Circuit affirmed that dismissal on standing grounds.  *Bates on behalf of the United States* v. *Trump*, 2022 WL 453397 (2d Cir. Feb. 15, 2022).  The Supreme Court denied both certiorari and rehearing.  *Bates* v. *Trump*, No. 21-1389 (U.S.), https://www.supremecourt.gov/docket/docketfiles/html/public/21-1389.html.  Yet as the Supreme Court recently noted, one individual plaintiff may "singlehandedly generate[ ] a circuit split."  *Acheson Hotels, LLC* v. *Laufer*, 601 U.S. 1, 3 (2023).

Pirro, as United States Attorney for the District of Columbia, are or were fiduciaries of the United States and of the American People and therefore owe or owed fiduciary duties of truth, care, and loyalty.

170.    A declaration that the President of the United States, the Attorney General of the United States, and the United States Attorney for the District of Columbia are fiduciaries of the United States would make plain that under the Constitution, executive power is vested in the President and all executive subordinates as a public trust, with the beneficiaries of that trust being not the President (a trustee), but rather the United States and the American People.

**Second Cause of Action**
Breach of Fiduciary Duty—Espionage Act Violations
(Against Defendant Trump)

171.    Plaintiff repeats and incorporates the allegations of paragraphs 1–170 and of Exhibits A and B.

172.    As alleged in the First Cause of Action, by virtue of holding the office of President of the United States, Defendant Trump is and was a fiduciary and owes fiduciary duties to the United States.

173.    Some of a president's fiduciary duties continue after the president is no longer in office, including the duty to safeguard the former employer's confidential information.

174.    If the allegations of Exhibit A—the Superseding Indictment alleging 32 counts of violating the Espionage Act—are true, then Defendant Trump committed the crimes alleged at the same time as he owed fiduciary duties to the United States, including a duty of care not to violate federal criminal law, a duty of care to treat national defense information as required, and a duty of loyalty to the United States and its interests, instead of to Trump's own interests.

175. If the allegations of Exhibit A and B are true, then Defendant Trump breached his fiduciary duties by committing the crimes alleged in Exhibit A at least in part for a personal, business purpose, as alleged in Exhibit B.

176. Defendant Trump's breaches of fiduciary duty proximately caused the United States consequential damages, including the costs incurred to investigate and prosecute Defendant Trump and his co-defendants for their alleged crimes.

177. On information and belief, Defendant Trump's breaches have also caused the United States to sustain reputational damages, in that United States allies, which otherwise might share sensitive information, now question Defendant Trump's willingness and ability to safeguard such information.

178. Defendant Trump's breaches of fiduciary duty were criminal, wanton, or grossly reckless. Therefore the Court should award the United States punitive damages.

**Third Cause of Action**
Breach of Fiduciary Duty—Volume Two Cover-Up
(Against All Defendants)

179. Plaintiff repeats and incorporates the allegations of paragraphs 1–178.

180. As alleged in the First Cause of Action, by virtue of holding high offices at the pinnacle of the Executive Branch, all Defendants were fiduciaries of the United States and owed fiduciary duties to the United States.

181. Among the fiduciary duties that all Defendants owed to the United States was the duty of truth (to disclose material information to the American People or at least to their elected representatives in Congress); and the duty of loyalty (to put the interests of the United States ahead of Defendants' personal interests).

182.    Defendants' fiduciary duties also included a duty to deal fairly, honestly, and with undivided loyalty; a duty to safeguard the interests of the United States; a duty to act in good faith in any matter relating to the United States; a duty to act according to the Constitution and laws of the United States; a duty to put the interests of the United States above all others; and a duty to refrain from acting out of a conflict of interest or any interest adverse to the United States.

183.    By covering up Volume Two, Defendants have breached their fiduciary duties to the United States.

184.    In breaching their fiduciary duties with respect to Volume Two, Defendants have proximately caused the United States to suffer financial and other damages.

185.    The United States is therefore entitled to compensation and recovery from Defendants, in an amount to be determined at trial.

### Fourth Cause of Action
Aiding and Abetting Breach of Fiduciary Duty—Volume Two Cover-Up
(Against Defendant Bondi)

186.    Plaintiff repeats and incorporates the allegations of paragraphs 1–185.

187.    In the alternative, even if disclosing Volume Two to the American People or Congress was not within Defendant Bondi's own fiduciary duties, Defendant Bondi aided and abetted Defendant Trump's violation of his fiduciary duties with respect to Volume Two.

188.    On information and belief, Defendant Bondi knew that Defendant Trump was a fiduciary and owed duties of truth, care, and loyalty to the United States.

189.    Despite that knowledge, Defendant Bondi substantially assisted Defendant Trump's improper cover-up of Volume Two by making the determination alleged above.

-25-

**Fifth Cause of Action**
Breach of Fiduciary Duty—Revenge Prosecution of Members of Congress and
Campaign To Pressure the Federal Reserve
(Against Defendant Trump)

190.    Plaintiff repeats and incorporates the allegations of paragraphs 1–185.

191.    As alleged above, by virtue of being President of the United States, Defendant Trump is a fiduciary and owes fiduciary duties to the United States.

192.    Among Defendant Trump's fiduciary duties is the duty to take care that the laws are faithfully executed and his duty to preserve, protect, and defend the Constitution of the United States.

193.    Rather than fulfill these duties, Defendant Trump has breached them.

194.    Defendant Trump's calls for prosecutions of Members of Congress were a dereliction of his sworn duty faithfully to execute the laws and of his sworn duty to preserve, protect, and defend, the First Amendment and the Speech and Debate Clause.

195.    Defendant Trump's pressure campaign against the Federal Reserve Board is contrary to the laws of the United States that shield the Board and its interest-rate decisions from political pressure.

**Sixth Cause of Action**
Legal Malpractice—Revenge Prosecution of Members of Congress
(Against Defendants Bondi and Pirro)

196.    Plaintiff repeats and incorporates the allegations of paragraphs 1–195.

197.    When Defendant Bondi was serving the United States as its Attorney General, Defendant Bondi was in an attorney-client relationship with the United States.

198.    As the currently serving United States Attorney for the District of Columbia, Defendant Pirro is in an attorney-client relationship with the United States.

-26-

199.    At all relevant times, Defendants Bondi and Pirro held themselves out as experienced lawyers.  Defendants Bondi and Pirro purported to possess the skill and knowledge required both for practicing law in general and, in particular, for representing the United States as their client and for supervising DOJ and USAO-DC, respectively.

200.    Defendants Bondi and Pirro owed the United States duties of care and loyalty, including a duty to use prosecutorial power legitimately in the interests of the United States, not improperly in the personal interests of Defendant Trump.

201.    By allowing DOJ and USAO-DC to attempt to prosecute Members of Congress for engaging in constitutionally protected speech, Defendants Bondi and Pirro each failed to exercise the degree of care, skill, diligence, knowledge, and supervision commonly exercised by a reasonable lawyer under the circumstances.

202.    By allowing DOJ and USAO-DC to attempt to prosecute Members of Congress for engaging in constitutionally protected speech, Defendants Pirro and Bondi improperly elevated Defendant Trump's personal interests over the interests of the United States.

203.    Thus Defendants Pirro and Bondi created, and failed to resolve, a conflict of interest between Defendant Trump's personal interests and the interests of the United States.

204.    The attempted prosecutions of six Members of Congress were also wasteful, in that the prosecutions consumed DOJ and USAO-DC time and resources that should have been devoted to advancing the interests of the United States, as opposed to the interests of Trump.

205.    It was a departure from the standard of practice for DOJ and USAO-DC to attempt to prosecute Members of Congress for engaging in constitutionally protected speech.

206.    For the attempted prosecutions to occur while Bondi was Attorney General and Pirro was U.S. Attorney was a failure of Bondi and Pirro to supervise DOJ and USAO-DC.

207.    These departures from the standard of practice, and these failures to supervise, proximately caused the United States to suffer damages.

208.    The damages incurred by the United States are actual and ascertainable.

209.    The amount of damages should be determined at trial and awarded to the United States, along with costs and interest.

### Seventh Cause of Action
Legal Malpractice—Campaign To Pressure the Federal Reserve
(Against Defendants Bondi and Pirro)

210.    Plaintiff repeats and incorporates the allegations of paragraphs 1–209.

211.    At all relevant times, as lawyers for the United States, Defendants Bondi and Pirro owed a duty to the United States not to request that any subpoena be issued for any pretextual or improper purpose—even if such an improper subpoena might satisfy or gratify the President of the United States.

212.    In the alternative, as lawyers for the United States who were the heads of DOJ and USAO-DC, Defendants Bondi and Pirro had a duty to supervise subordinate DOJ and USAO-DC lawyers to ensure that the subordinate lawyers did not present any subpoena for any pretextual or improper purpose—even if such an improper subpoena might satisfy or gratify the President of the United States.

213.    On information and belief, Defendants Bondi and Pirro either (i) breached their own duties not to request subpoenas for any improper or pretextual purpose or (ii) failed to

supervise subordinate lawyers at DOJ and USAO-DC so as to ensure that subpoenas were not requested for improper purposes.

214. Either way, given that DOJ and USAO-DC were found to have requested subpoenas for improper and pretextual purposes, Defendants Bondi and Pirro each failed to exercise the degree of care, skill, diligence, knowledge, and supervision commonly exercised by a reasonable lawyer under the circumstances.

215. Given that DOJ and USAO-DC were found to have requested subpoenas for improper and pretextual purposes, Defendants Pirro and Bondi improperly elevated Defendant Trump's personal interests over the interests of the United States.

216. Thus Defendants Pirro and Bondi created, and failed to resolve, a conflict of interest between Defendant Trump's personal interests and the interests of the United States.

217. The improper and pretextual requests for subpoenas were also wasteful, in that the improper and pretextual requests consumed DOJ and USAO-DC time and resources that should have been devoted to advancing the interests of the United States, as opposed to the interests of Trump.

218. It was a departure from the standard of practice for DOJ and USAO-DC to request subpoenas for improper or pretextual purposes.

219. For those improper and pretextual requests to occur while Bondi was Attorney General and Pirro was U.S. Attorney was a failure of Bondi and Pirro to supervise DOJ and USAO-DC.

220. These departures from the standard of practice, and these failures to supervise, proximately caused the United States to suffer damages.

221.   The damages incurred by the United States are actual and ascertainable.

222.   The amount of damages should be determined at trial and awarded to the United States, along with costs and interest.

**Request for Relief**

WHEREFORE Plaintiff, derivatively on behalf of the United States, respectfully prays for judgment—

a.   declaring that Defendant Trump, as President of the United States; Defendant Bondi, as former Attorney General of the United States; and Defendant Pirro, as United States Attorney for the District of Columbia, are or were fiduciaries of the United States and the American People and accordingly owe or owed fiduciary duties of truth, care, and loyalty;

b.   requiring all Defendants to disgorge, and to make restitution to the United States for, all salaries, compensation, and other benefits that Defendants received while acting as faithless servants or as careless, neglectful, and conflicted lawyers;

c.   awarding the United States compensatory damages for Defendants' breaches of fiduciary duty in an amount to be determined at trial, together with interest;

d.   awarding the United States reputational damages for Defendants' breaches of fiduciary duty in an amount to be determined at trial, together with interest;

e.   awarding the United States compensatory damages for the legal

malpractice of Defendants Bondi and Pirro in an amount to be determined

at trial, together with interest;

f.   awarding the United States punitive damages in an amount to be

determined at trial;

g.   awarding Bates his costs, disbursements, and reasonable attorney's fees

(if he retains counsel; he is currently *pro se*); and

h.   granting such further relief as may be just and proper.


Dated: New York, New York
       April 19, 2026

Respectfully submitted,

*/s/ Jeremy Bates*

_____
Jeremy Bates (D.D.C. Bar ID NY0579)
(not admitted to the District of Columbia Bar)
21 West Street Apt. 21J
New York, New York 10006
917-626-2473
jeremybates3@gmail.com
*Plaintiff* pro Se*, derivatively on behalf of the
   United States of America*