**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JEREMY BATES, derivatively on behalf of the
UNITED STATES OF AMERICA,

                  **Plaintiff,**

  v.

DONALD J. TRUMP, in his individual capacity;
PAMELA BONDI, in her individual capacity; and
JEANINE F. PIRRO, in her individual capacity,

                  **Defendants,**

  and the

UNITED STATES OF AMERICA,

                  **Nominal Defendant.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

            : Civil Action No. 26-cv-1328-TSC

 

**Memorandum of Law of Plaintiff Jeremy Bates, Derivatively**
**On Behalf of the United States of America, In Support of His Motion**
**<u>To Disqualify the U.S. Department of Justice from Representing Defendants</u>**

Jeremy Bates
21 West Street Apt. 21J
New York, New York 10006
917-626-2473
jeremybates3@gmail.com
*Plaintiff* pro Se,
  *derivatively on behalf of the*
  *United States of America*

Memorial Day, May 25, 2026

**Table of Contents**

PRELIMINARY STATEMENT..................................................................................................1

FACTS.................................................................................................................................... 3

    A. Defendants' Status as Officers of and Lawyers for the United States,
    Owing Fiduciary and Professional Duties to the United States................................. 3

    B. Defendants' Breaches of Their Duties to the United States...................................... 4

        1. Violations of the Espionage Act by keeping classified documents.......................5

        2. Cover-up of Volume Two of Jack Smith's report.....................................................5

        3. Revenge prosecutions of Members of Congress......................................................6

        4. Campaign to pressure the Federal Reserve............................................................. 6

    C. Damages Proximately Caused by Defendants' Breaches and
    Suffered by the United States....................................................................................7

    D. Demand Futility, and Cognizable Interests of the Derivative Plaintiff..................... 8

PROCEDURAL HISTORY.....................................................................................................8

ARGUMENT.......................................................................................................................... 9

    I. The Court Has Jurisdiction of This Case and Power To Decide the Motion
    Because the United States Has Standing and Bates May Derive It..................................9

        A.  The United States has Article III standing to bring these claims............................. 9

        B.  The derivative posture of this case is jurisdictionally irrelevant............................ 11

    II. Despite 28 U.S.C. §516, This Action May Proceed Derivatively.................................. 13

        A.  Derivative actions have developed for centuries
        in English and American courts of equity................................................................ 13

        B.  The text of §516 does not mention, much less bar,
        derivative remedies on behalf of the United States.................................................15

        C.  Section 516 is not jurisdictional and is otherwise ambiguous................................17

        D.  Section 516 should not be construed to produce absurd results..............................19

    III. The Court Should Disqualify DOJ and Its Attorneys from Defending
    Trump, Bondi, and Pirro Against Claims That Belong to the United States.................20

CONCLUSION.......................................................................................................................23

## Table of Authorities

**Page(s)**

**Cases**

*Acheson Hotels, LLC* v. *Laufer*,
601 U.S. 1 (2023) ............................................................................................................... 1

*Ashwander* v. *Tennessee Valley Auth.*,
297 U.S. 288 (1936) ........................................................................................................... 14

*Att'y Gen.* v. *Utica Ins. Co.*,
2 Johns Ch. 371 (N.Y. Ch. 1817) ...................................................................................... 14

*Bates on behalf of United States* v. *Trump*,
2022 WL 453397 (2d Cir. Feb. 15, 2022) .......................................................................... 12

*Bates* v. *Trump*,
No. 21-1389, 142 S. Ct. 2872 (2022) .................................................................................. 12

*Blue Lake Forest Prod., Inc.* v. *United States*,
75 Fed. Cl. 779 (2007) ....................................................................................................... 19

*Boaz* v. *FedEx Cust'r Info. Servs.*,
725 F.3d 603 (6th Cir. 2013) ............................................................................................. 18

*Califano* v. *Yamasaki*,
442 U.S. 682 (1979) ........................................................................................................... 15

* *Case, Inc.* v. *United States*,
88 F.3d 1004 (Fed. Cir. 1996) ........................................................................................... 16

* *Center for Biological Diversity* v. *EPA*,
56 F.4th 55 (D.C. Cir. 2022) .............................................................................................. 16

*Charitable Corporation* v. *Sutton*,
26 Eng. Rep. 642,
2 Atk. Rep. 401 (Ch. 1742) ............................................................................................... 13

*Cobell* v. *Norton*,
240 F.3d 1081 (D.C. Cir. 2011) ......................................................................................... 16

*Cohen* v. *Beneficial Indus. Loan Corp.*,
337 U. S. 541 (1949) .......................................................................................................... 11

*Cotter on behalf of Reading Int'l, Inc.* v. *Kane*,
136 Nev. 559 (2020) ........................................................................................................... 22

*Cunningham* v. *Cornell Univ.*,
    604 U.S. 693 (2025) ............................................................................................... 12

*Daily Income Fund, Inc.* v. *Fox*,
    464 U.S. 523 (1984) ............................................................................................... 11

*Defense Supplies Corp.* v. *U.S. Lines Co.*,
    148 F.2d 311 (2d Cir. 1945) .................................................................................. 20

*In re Digimarc Corp. Derivative Litig.*,
    549 F.3d 1223 (9th Cir. 2008) ............................................................................... 12

* *Dodge* v. *Woolsey*,
    59 U.S. (18 How.) 331 (1855) ............................................................................... 15

*Doermer* v. *Callen*,
    847 F.3d 522 (7th Cir. 2017) ................................................................................. 12

*EBC I, Inc.* v. *Goldman, Sachs & Co.*,
    5 N.Y.3d 11 (2005) .................................................................................................. 3

* *Executive Business Media, Inc.* v. *U.S. Dep't of Defense*,
    3 F.3d 759 (4th Cir. 1993) ..................................................................................... 18

*Facebook, Inc. IPO Derivative Litig.*,
    797 F.3d 148 (2d Cir. 2015) .................................................................................. 11

* *FDA* v. *Alliance for Hippocratic Med.*,
    602 U.S. 367 (2024) ........................................................................................ 10, 23

*First Hartford Corp. Pension Plan & Tr.* v. *United States*,
    194 F.3d 1279 (Fed. Cir. 1999) ............................................................................. 12

*Freeman* v. *Brecher*,
    155 A.D.3d 453 (1st Dep't 2017) ............................................................................ 3

*Groper* v. *Taff*,
    717 F.2d 1415 (D.C. Cir. 1983) ............................................................................ 20

*Harlow* v. *Fitzgerald*,
    457 U.S. 800 (1982) ............................................................................................... 19

*Harrow* v. *Dep't of Defense*,
    601 U.S. 480 (2024) ............................................................................................... 17

*Hawes* v. *City of Oakland*,
    104 U.S. 450 (1881) ............................................................................................... 11

*Headfirst Baseball LLC* v. *Elwood*,
  999 F. Supp. 2d 199 (D.D.C. 2013) ................................................... 21

*Herero People's Rep. Corp.* v. *Deutsche Bank, A.G.*,
  370 F.3d 1192 (D.C. Cir. 2004) ...................................................... 10

*Howard* v. *Goodman*,
  No. 20-CV-2187 (DLF),
  2021 WL 4061143 (D.D.C. Sept. 7, 2021) ........................................ 22

*Hughes Aircraft Co.* v. *United States*,
  534 F.2d 889 (Ct. Cl. 1976) ........................................................... 16

*In re Internet Navigator Inc.*,
  293 B.R. 198 (Bankr. N.D. Iowa 2003) ............................................ 22

*In re Isaacs*,
  895 F.3d 904 (6th Cir. 2018) ...................................................... 11–12

*Jules* v. *Andrew Balazs Props.*,
  608 U.S. __ (May 14, 2026) ............................................................ 9

*Koster* v. *Lumbermens Mut. Cas. Co.*,
  330 U.S. 518 (1947) ...................................................................... 11

* *Luckenbach Steamship Co.* v. *United States*,
  315 F.2d 598 (2d Cir. 1963) ........................................................... 20

*Marbury* v. *Madison*,
  5 U.S. (1 Cranch) 137 (1803) ......................................................... 14

*McMahon* v. *New Castle Assocs.*,
  532 A.2d 601 (Del. Ch. 1987) ......................................................... 14

*McQuiggin* v. *Perkins*,
  569 U.S. 383 (2013) ...................................................................... 16

* *Medina* v. *Planned Parenthood South Atlantic*,
  606 U.S. 357 (2025) ...................................................................... 20

*Meyer* v. *Fleming*,
  327 U.S. 161 (1946) ...................................................................... 22

*In re Murray Energy Corp.*,
  788 F.3d 330 (D.C. Cir. 2015) ........................................................ 15

*Murthy* v. *Missouri*,
  603 U.S. 43 (2024) ........................................................................ 10

*Nat'l Credit Union Admin. Bd.* v. *U.S. Bank N.A.*,
  898 F.3d 243 (2d Cir. 2018) ......................................................................... 11

*Palumbo* v. *Tele-Commc'ns, Inc.*,
  157 F.R.D. 129 (D.D.C. 1994) ..................................................................... 20

*Percoco* v. *United States*,
  598 U. S. 319 (2023) ...................................................................................... 4

*Quadrant Structured Prods. Co., Ltd.* v. *Vertin*,
  115 A.3d 535 (Del. Ch. 2015) ........................................................................ 8

*Riley* v. *Bondi*,
  606 U.S. 259 (2025) ...................................................................................... 17

*RJR Mech. Inc.* v. *Ruvoldt*,
  170 A.D.3d 515 (1st Dep't 2019) ................................................................... 3

* *Robinson* v. *Smith*,
  3 Paige Ch. 222 (N.Y. Ch. 1832) ........................................................... 14, 15

*Ross* v. *Bernhard*,
  396 U.S. 531 (1970) ...................................................................................... 11

*Russell* v. *Liberty Ins. Underwriters, Inc.*,
  950 F.3d 997 (8th Cir. 2020) ........................................................................ 20

*Sobba* v. *Elmen*,
  462 F. Supp. 2d 944 (E.D. Ark. 2006) .......................................................... 22

*Sparrow* v. *United Air Lines, Inc.*,
  216 F.3d 1111 (D.C. Cir. 2000) ...................................................................... 9

*Spokeo, Inc.* v. *Robins*,
  578 U.S. 330 (2016) ........................................................................................ 9

*Springer* v. *Philippine Islands*,
  277 U.S. 189 (1928) ........................................................................................ 4

*Suess* v. *United States*,
  33 Fed. Cl. 89 (1995) .................................................................................... 11

*Thole* v. *U. S. Bank N.A.*,
  590 U.S. 538 (2020) ...................................................................................... 12

*United States* v. *594,464 Pounds of Salmon*,
  871 F.2d 824 (9th Cir. 1989) ........................................................................ 18

v

*United States* v. *Cook*,
   594 F.3d 883 (D.C. Cir. 2010) ...................................................................... 19

\* *United States v. I.C.C.*,
   337 U.S. 426 (1949) ...................................................................................... 20

\* *United States* v. *Mattson*,
   600 F.2d 1295 (9th Cir. 1979) ...................................................................... 16

*United States* v. *Mitchell*,
   39 F.3d 465 (4th Cir. 1994) .......................................................................... 18

*Urdan* v. *WR Cap. Partners, LLC*,
   No. CV 2018-0343-JTL,
   2019 WL 3891720 (Del. Ch. Aug. 19, 2019) ............................................... 13

*Uzuegbunam* v. *Preszewski*,
   592 U.S. 279 (2021) ...................................................................................... 10

*Xiulu Ruan* v. *United States*,
   597 U.S. 450 (2022) ...................................................................................... 17

*Weinberger* v. *Romero-Barcelo*,
   456 U.S. 305 (1982) ...................................................................................... 15

## Constitution

U.S. Const. Art. III, § 2, cl. 1 ....................................................................... 9

## Statutes, Rules, and Regulations

15 U.S.C. §78u-1(h)(1) .................................................................................... 4

28 CFR §50.15 ................................................................................................ 19

28 U.S.C. §50 .................................................................................................. 17

28 U.S.C. §505 ................................................................................................ 18

28 U.S.C. §511 ................................................................................................ 18

28 U.S.C. §512 ................................................................................................ 18

\* 28 U.S.C. §516 .................................................................................. 13, 16, 17, 19

28 U.S.C. §1345 .................................................................................................... 17

28 U.S.C. §2072(b) (Rules Enabling Act) ............................................................ 12

* D.C. Rule Prof'l Conduct 1.7(b) ......................................................................... 21

D.C. Rule Prof'l Conduct 1.8(g) ............................................................................ 21

* D.C. Rule Prof'l Conduct 1.13(a) ....................................................................... 21

Fed. R. Civ. P. 23.1,
    Adv. Comm. Note to 1966 Addition ................................................................... 12

Fed. R. Civ. P. 82 ................................................................................................... 12

**Other Authorities**

CPLR § 6313(a) ......................................................................................................

Black's Law Dictionary (5th ed. 1979) ................................................................. 18

Griffin Bell, *The Attorney General: The Federal Government's*
    *Chief Lawyer and Chief Litigator, or One Among Many?*,
    46 Fordham L. Rev. 1049 (1978) ...................................................................... 18

3 James D. Cox & Thomas L. Hazen,
    Law of Corporations §15:17 (3d ed. 2018) ....................................................... 13

15 Cyc. Fed. Proc. §78:39 (3d ed.) ...................................................................... 22

13 William Meade Fletcher et al.,
    Fletcher Cyclopedia of Law of Corporations § 5997 (2018) ............................ 13

* Theodore Olson, *The Attorney General's Role as*
    *Chief Litigator for the United States*,
    6 O.L.C. 47 (Jan. 4, 1982) ................................................................................ 18

Joseph Story, Commentaries on the Law of Agency §217 (1839) ......................... 10

New York State Unified Court System,
    Attorney Online Services, Attorney Directory data, at
    https://iapps.courts.state.ny.us/attorneyservices/search ...................................... 3

Plaintiff *pro se* Jeremy Bates ("Plaintiff" or "Bates"), derivatively on behalf of

Nominal Defendant the United States of America, respectfully submits this memorandum

of law in support of his motion ("Motion," ECF 5) to disqualify the United States Department

of Justice ("DOJ") and its attorneys from representing Defendants in this action.

## PRELIMINARY STATEMENT

This Motion addresses the acute conflict of interest presented by an Assistant United

States Attorney's appearance in this action—not for her employer, the United States, but for

the individual Defendants, who are sued derivatively, *on behalf of the United States*.  Before

deciding this Motion to disqualify, however, the Court should first decide whether it has

subject-matter jurisdiction (the Court does) and whether Bates may sue derivatively (he may).

In other words, this Motion packages together three threshold issues for the Court to decide

and perhaps also, given their public importance, to certify for interlocutory appeal.

*First*, the Court has subject-matter jurisdiction of this action because there is a case

and controversy that gives the United States standing to sue.  The Complaint alleges that the

President of the United States, the immediate former Attorney General of the United States,

and the United States Attorney breached their fiduciary or lawyerly duties, or aided and

abetted breaches of fiduciary duty, to the United States.  The Complaint also alleges that

Defendants' misconduct proximately caused the United States to suffer damages.  So the

requisites for subject-matter jurisdiction and Article III standing—injury-in-fact to the United

States, traceability, and redressability—are all present here.

Moreover, the fact that this case is brought derivatively does nothing to change the

conclusion that the Court has jurisdiction.  For the Complaint alleges that it would be futile to

demand that DOJ sue the President, the former Attorney General, and the U.S. Attorney.  The Complaint also alleges that Bates has cognizable interests in the United States that suffice to make him an appropriate stakeholder to sue derivatively, on behalf of the United States.

In private litigations (if all requirements of Rule of Civil Procedure 23.1 are met), these allegations would justify derivative standing.  Derivative standing goes back centuries.  It is a traditional use of courts' inherent and equitable powers.  And the derivative nature of a case is irrelevant to the Article III standing inquiry.  If there is a case and controversy, then a federal court has the power to allow a stakeholder plaintiff to protect a private entity—a corporation, partnership, trust, or nonprofit—by suing derivatively, on behalf of the entity.

The Court should now exercise the same power here.  The Court should allow Bates to protect the United States, and to vindicate its interests, by suing derivatively on its behalf.

*Second*, if Article III standing exists (it does), then 28 USC §516 has no impact here.  That statute reserves certain litigation conduct to DOJ.  But §516 is nonjurisdictional, it is otherwise highly ambiguous, it is subject to exceptions (it has over 30 statutory exceptions), and it must not be read to create conflicts of interest in this litigation.  So as applied here, §516 has no effect.  Regardless of that statute, this case should proceed derivatively.

*Third*, DOJ must be disqualified.  DOJ's appearance for Defendants creates a conflict.  If a lawyer's client is the United States, then the lawyer must not represent defendants who are being sued on behalf of the United States.  Of course, this Court has the inherent power to ensure the integrity of its proceedings.  The Court should exercise this power to ensure that the Nominal Defendant and its lawyers do not defend this case on the merits, but stand aside.

For all these reasons, the Court should grant this Motion to disqualify.

2

**FACTS**

Plaintiff Bates is a New York lawyer and a member of this Court's bar.  (ECF 1 ¶ 54.)

As judicial records show, Bates graduated from the University of Chicago Law School. He was admitted to practice law in the New York courts in 2003; he is registered, his next registration is due in 2027, and he has no record of attorney discipline.[1]  As cases show, Bates has handled alleged claims for breach of fiduciary duty or legal malpractice.  *E.g.*, *EBC I, Inc.* v. *Goldman, Sachs & Co.*, 5 N.Y.3d 11 (2005); *RJR Mech. Inc.* v. *Ruvoldt*, 170 A.D.3d 515 (1st Dep't 2019); *Freeman* v. *Brecher*, 155 A.D.3d 453 (1st Dep't 2017).

Here, Bates alleges such claims, derivatively on behalf of the United States, against three Defendants: the sitting President of the United States, Donald Trump ("Trump"); the immediate past Attorney General of the United States, Pamela Bondi ("Bondi"); and the current United States Attorney for this District, Jeanine F. Pirro ("Pirro").  (ECF 1 at 1.)

A. **Defendants' Status as Officers of and Lawyers for the United States, Owing Fiduciary and Professional Duties to the United States**

The claims are for breach of fiduciary duty to the United States, aiding and abetting breaches of fiduciary duty to the United States, and legal malpractice (by Bondi and Pirro in representing the United States).  (ECF 1 ¶¶ 172–222.)  The Complaint seeks, *inter alia*, a declaration that Trump, Bondi, and Pirro are or were fiduciaries of the United States and therefore owe or owed duties of truth, care, and loyalty.  (ECF 1 ¶ 170.)  Such a declaration would clarify that executive power is vested in officers as a public trust.  (*Id.* ¶ 171.)[2]

---

[1] New York State Unified Court System, Attorney Online Services, Attorney Directory data, at https://iapps.courts.state.ny.us/attorneyservices/search (visited May 23, 2026).

[2] This principle is established.  The Supreme Court has held, in a line of honest-services cases, that "'[a]n agent owes a fiduciary obligation to the principal,' see, *e. g.*, 1 Restatement (Third)

Thus the Complaint alleges that "by virtue of holding the office of President of the United States, Defendant Trump is and was a fiduciary and owes fiduciary duties to the United States." (ECF 1 ¶ 172; *see also id*. ¶ 180 (alleging that "by virtue of holding high offices at the pinnacle of the Executive Branch, all Defendants were fiduciaries of the United States and owed fiduciary duties to the United States").)

Similarly, the Complaint alleges that Defendants Bondi and Pirro, as Attorney General of the United States and United States Attorney for this District, respectively, were in attorney-client relationships with the United States. (ECF 1 ¶¶ 197, 198.) The Complaint further alleges that as attorneys for the United States, Bondi and Pirro owed the United States duties of care and loyalty. (*Id*. ¶ 200.) These duties included "a duty to use prosecutorial power legitimately in the interests of the United States, not improperly in the personal interests of Defendant Trump." (*Id*.)

### B.    Defendants's Breaches of Their Duties to the United States

The Complaint alleges that Trump, Bondi, and Pirro breached their duties to the United States in at least four specific ways.

---

of Agency § 1.01, Comment *e*, p. 23 (2005), and therefore an agent of the government has a fiduciary duty to the government and thus to the public it serves." *Percoco* v. *United States*, 598 U. S. 319, 329–30 (2023). Executive officers are agents of the government. *Springer* v. *Philippine Islands*, 277 U.S. 189, 202 (1928) (including, among "executive functions," "authority to... appoint the agents charged with the duty" of enforcing laws); *id*. at 203 (referring to "public agents... charged with the exercise of executive functions"); *see also* 15 U.S.C. §78u-1(h)(1) (providing, for purposes of civil insider-trading liability, that "each executive branch employee [defined to include the President]... owes a duty arising from a relationship of trust and confidence to the United States Government and the citizens of the United States with respect to material, nonpublic information").

4

### 1.     *Violations of the Espionage Act by keeping classified documents*

The first category of breaches includes Trump's 32 violations of the Espionage Act, as alleged in the Superseding Indictment.  (ECF 1 Ex. A.)  According to a letter from the Ranking Member of the House Judiciary Committee, Special Counsel Jack Smith's team believed that Trump's motive for illegally taking, and then keeping, classified documents was that the documents were "pertinent to" Trump's "business interests."  (ECF 1 ¶ 80 & Ex. B.)

If the allegations in the Superseding Indictment and the belief of the Special Counsel's team were accurate, then Trump committed the crimes alleged in violation of his fiduciary duties to the United States—including a duty of care not to violate federal law, a duty of care to treat national defense information as required, and a duty of loyalty to the United States and its interests, instead of to Trump's own business interests.  (ECF 1 ¶¶ 174, 175.)

### 2.     *Cover-up of Volume Two of Jack Smith's report*

Trump's breaches of duty continued when he, along with Bondi, covered up the Special Counsel's report that detailed Trump's alleged crimes.  (ECF 1 ¶¶ 66–84, 180–85.)

The cover-up violated other fiduciary duties, including a duty to deal fairly, honestly, and with undivided loyalty; a duty to safeguard the interests of the United States; a duty to act in good faith in any matter relating to the United States; a duty to put the interests of the United States above all others; and a duty to refrain from acting out of a conflict of interest or any interest adverse to the United States.  (*Id*. ¶ 182–83.)

This cover-up is alleged both as a direct claim (Third Cause of Action) and, as to Bondi, an aiding-and-abetting claim (Fourth Cause of Action).  (*Id*. ¶¶ 180–89.)

5

### 3.    Revenge prosecutions of Members of Congress

The Complaint alleges that Trump breached his duties to take care that the laws are faithfully executed and to preserve, protect, and defend the Constitution, including the First Amendment and the Speech and Debate Clause.  (ECF ¶¶ 192–94.)  "Trump's calls for prosecutions of Members of Congress were a dereliction" of these duties.  (*Id*. ¶ 194.)

That attempted prosecution was also legal malpractice by Bondi and Pirro.  As lawyers employed by the United States to advance its interests, Bondi and Pirro owed a duty "to use prosecutorial power legitimately in the interests of the United States, not improperly in the personal interests of Defendant Trump."  (*Id*. ¶ 200.)  The attempted prosecution of Members of Congress generated a conflict of interest, departed from the standard of practice, and involved a failure to supervise other lawyers at DOJ.  (*Id*. ¶¶ 203–06.)

The revenge prosecutions are alleged as a direct fiduciary-duty claim against Trump and as a legal-malpractice claim against Bondi and Pirro.  (*Id*. ¶¶ 190–209.)

### 4.    Campaign to pressure the Federal Reserve

The fourth and last general category of breach alleged in this Complaint is Trump's, Bondi's, and Pirro's unlawful campaign to pressure the Board of Governors of the Federal Reserve System (the "Board") to lower interest rates.  (ECF 1 ¶¶ 105–21.)  The Chief Judge of this Court has already determined that DOJ's subpoenas to the Board were improper and that the asserted justifications for the subpoenas were "pretexts."  (*Id*. ¶ 117; *see also id*. Ex. C (opinion quashing subpoenas and order denying DOJ's motion to reconsider).  Again, the campaign to pressure the Federal Reserve is alleged both as a fiduciary-duty claim against Trump  and as a legal-malpractice claim against Bondi and Pirro.  (*Id*. ¶¶ 190–95 & 210–222.)

6

**C.**    **Damages Proximately Caused by Defendants' Breaches and Suffered by the United States**

The Complaint alleges that Trump's, Bondi's, and Pirro's breaches have proximately caused the United States to suffer at least three types of damages. (ECF 1 ¶¶ 122–139.)

First, disgorgement and restitution. The United States provided Defendants compensation and other benefits on the expectation that Defendants would be faithful servants or careful, diligent, and unconflicted lawyers. But Trump, Bondi, and Pirro breached their fiduciary duties and committed legal malpractice. So the United States should now recover the compensation and benefits it paid them. As to Trump, this recovery should include the value of living rent-free in the White House and the value of his free travel. (*Id*. ¶¶ 123–32.)

Second, the misconduct of Trump, Bondi, and Pirro has proximately caused the United States to suffer consequential damages. Defendants' misdeeds consumed "time and resources that would have been better spent advancing other interests of the United States, as opposed having to investigate and prosecute Trump's alleged crimes or advancing Trump's own personal interests." (*Id*. ¶ 133.) On information and belief, Trump's, Bondi's, and Pirro's "unlawful assault on the independence of the Federal Reserve" may have cost the United States "hundreds of millions of dollars, if not more, in marginally higher interest rates that the United States pays on its $38 trillion of federal debt." (*Id*. ¶ 135.)

Third, reputational damages. "On information and belief, Defendant Trump's breaches of fiduciary duty have caused the United States reputational damages that the United States should now recover." (*Id*. ¶ 136.)

In addition to the above damages, the Complaint also demands punitive damages for the United States, both to punish these Defendants and to deter others. (*Id*. ¶ 137–39.)

7

### D.       Demand Futility, and Cognizable Interests of the Derivative Plaintiff

Bates alleges demand futility (*see* ECF 1 ¶¶ 145–64) and the equivalent of contemporaneous share ownership in a corporate action.  On the latter point, Bates alleges that he has cognizable interests that support his derivative standing on behalf of the United States.  Bates was born in the United States and therefore is a United States citizen.  (ECF 1 ¶ 51.)  Years ago, Bates dutifully registered for the Selective Service System.  (*Id*. ¶ 52.)  And in 2025, Bates paid the Treasury tens of thousands of dollars in federal taxes.  (*Id*. ¶ 53.)[3]

### PROCEDURAL HISTORY

Bates filed the Complaint, derivatively on behalf of the United States, on April 19.  (ECF 1.)  A week later, Bates moved for special service and related reliefs.  (ECF 3 *passim*.)

On May 15 an AUSA mooted part (but not all) of that first motion by appearing for Defendants Trump, Bondi, and Pirro.  (ECF 4.)  The notice of appearance does not describe any limit on the AUSA's representation.  (*Id*.)  Nor does the notice of appearance state whether the AUSA who appeared is outside the normal chain of DOJ command in any way.  (*Id*.)  It thus appears that the AUSA who appeared is under the authority and control of two of the Defendants, Trump and Pirro.  The AUSA has appeared for all three Defendants even though they are all sued derivatively, on behalf of the United States.

Bates now moves to disqualify the United States Department of Justice and its lawyers from representing the Defendants in this action.  Bates informed DOJ at 8:31 a.m. on Friday, May 22, of his intent to draft and file this Motion.  That same morning, the AUSA who has appeared for Defendants Trump, Bondi, and Pirro replied, "We will oppose this motion."

---

[3] A private derivative plaintiff "need not own a particular quantum of shares….  One share is enough." *Quadrant Structured Prods. Co., Ltd.* v. *Vertin*, 115 A.3d 535, 552 (Del. Ch. 2015).

**ARGUMENT**

This Motion to disqualify should be granted because the Court has jurisdiction of this action, because §516 should be construed to allow this derivative action on behalf of the United States, and because DOJ and its lawyers have an acute conflict of interest.[4]

I.      **The Court Has Jurisdiction of This Case and Power To Decide the Motion Because the United States Has Standing and Bates May Derive It.**

Article III vests in federal courts the judicial power to decide cases and controversies. U.S. Const. Art. III, § 2, cl. 1.  According to Supreme Court caselaw, a constitutionally sufficient case or controversy is present if, among other things, a plaintiff has standing.

Here, the United States would have standing to bring the claims alleged.  And this Article III conclusion is unaffected by the derivative posture of this action.

A.      **The United States has Article III standing to bring these claims.**

For Article III standing to exist, a plaintiff must (1) establish an injury in fact, (2) show that the injury is fairly traceable to the challenged conduct, and (3) seek a remedy that is likely to redress the injury.  *Spokeo, Inc.* v. *Robins*, 578 U.S. 330, 338 (2016).

At the pleading stage, a plaintiff must "clearly allege… facts demonstrating each element." *Id*.  The court must treat a complaint's allegations as true and must grant the plaintiff the benefit of inferences that can be derived from the facts alleged.  *Sparrow* v. *United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (motion to dismiss).

---

[4] "[J]urisdiction to decide a case includes jurisdiction to decide a motion within that case." *Jules* v. *Andrew Balazs Props.*, 608 U.S. __, slip op at 7 (May 14, 2026).

9

To establish an injury in fact, a plaintiff must identify a "concrete" injury, meaning one that is "real and not abstract." *FDA* v. *Alliance for Hippocratic Med.*, 602 U.S. 367, 381 (2024). The injury must be actual; that is, it must have already occurred or be likely. *Id*.

This Complaint alleges breaches of fiduciary duty and legal malpractice in the past. These are classic injuries in fact. They create Article III standing, for the beneficiary or client that suffered them, to sue the fiduciary or the attorney who allegedly caused the wrong.

As for traceability (or causation), the claims alleged here do not depend on any causal chain involving some third party not before the Court. Rather, the Defendants themselves committed the wrongs alleged. This case therefore is nothing like cases where traceability is lacking because the alleged injuries are of a "one-step-removed [or] anticipatory nature." *Murthy* v. *Missouri*, 603 U.S. 43, 57 (2024); *compare id*. at 59 ("If the plaintiffs were seeking compensatory relief, the traceability of their past injuries would be the whole ball game.").

This Complaint demands restitution and disgorgement of benefits paid or provided to Trump, Bondi, and Pirro. Such money damages would provide redress to the United States. *See Uzuegbunam* v. *Preszewski*, 592 U.S. 279, 293 (2021) (holding that plaintiffs who requested nominal damages for past violation of First Amendment rights had established redressability); *accord*, Joseph Story, Commentaries on the Law of Agency §217, p. 211 (1839) ("Where the breach of duty is clear, it will, in the absence of all evidence of other damage, be presumed that the party has sustained a nominal damage.").

In sum, if the United States were the named plaintiff here, and if it were represented by its own Department of Justice, then there would be no issue as to Article III standing.[5]

---

[5] "[W]hether a cause of action exists calls for a judgment on the merits, not jurisdiction." *Herero People's Rep. Corp.* v. *Deutsche Bank, A.G.*, 370 F.3d 1192, 1994 (D.C. Cir. 2004).

10

### B.    The derivative posture of this case is jurisdictionally irrelevant.

Nor is the jurisdiction of this Court defeased by the derivative posture of this case.

In corporate litigation, a derivative action "is an exception to the normal rule that the proper party to bring a suit on behalf of a corporation is the corporation itself." *Daily Income Fund, Inc.* v. *Fox*, 464 U.S. 523, 542 (1984); *see also Koster* v. *Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 522–23 (1947) (describing corporation as "real party interest"); *Hawes* v. *City of Oakland*, 104 U.S. 450, 460 (1881) ("[T]he corporation itself is the appropriate plaintiff.").

Nonetheless, a derivative shareholder plaintiff may "step into the corporation's shoes and [] seek[s] in its right the restitution he could not demand." *Cohen* v. *Beneficial Indus. Loan Corp.*, 337 U. S. 541, 548 (1949).  To close the terminological loop: the plaintiff sues "on a cause of action derived from the corporation." *Id*. at 549; *see also Ross* v. *Bernhard*, 396 U.S. 531, 541 (1970) (describing derivative action as "way[] of allowing parties to be heard in equity who could not speak at law").

Accordingly, courts analyze the constitutional aspect of derivative standing by looking to the entity—not to the derivative plaintiff.  Indeed, it is "illogical to argue that plaintiffs in a derivative suit must have standing as individuals." *Suess* v. *United States*, 33 Fed. Cl. 89, 94 (1995).  "[T]he derivative nature of the suit makes their standing as individuals irrelevant." *Id*.  A contrary argument by the government simply misunderstood derivative suits. *Id*. at 93.

The D.C. Circuit seem not to have reached the issue, but other Circuits take the view—usually in corporate cases—that derivative standing is not jurisdictional. *Nat'l Credit Union Admin. Bd.* v. *U.S. Bank N.A.*, 898 F.3d 243, 252 n.57 (2d Cir. 2018) (citing *Facebook, Inc. IPO Derivative Litig.*, 797 F.3d 148, 156–58 (2d Cir. 2015)); *In re Isaacs*, 895 F.3d 904,

915 n.2 (6th Cir. 2018); *Doermer* v. *Callen*, 847 F.3d 522, 526 n.1 (7th Cir. 2017); *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1237 (9th Cir. 2008); *First Hartford Corp. Pension Plan & Tr.* v. *United States*, 194 F.3d 1279, 1290 (Fed. Cir. 1999).

The nonjurisdictionality of derivative standing is confirmed by the existence of Rule 23.1 of the Federal Rules of Civil Procedure. Rule 23.1 governs the conduct of certain private derivative cases, but Rule 23.1 cannot enlarge the jurisdiction of the federal courts. *See* Rules Enabling Act, 28 U.S.C. §2072(b); Fed. R. Civ. P. 82; Adv. Comm. Note to 1966 Addition of Fed. R. Civ. P. 23.1 (framing Rule 23.1 as exercising courts' "inherent power to provide for the conduct of proceedings in a derivative action").[6]

In sum, this case presents a constitutionally sufficient case-or-controversy—between the United States (the injured entity) and Trump, Bondi, and Pirro (its miscreant officers). Whether a citizen-taxpayer may sue derivatively for the United States is, in the D.C. Circuit, a novel question. But if this question is answered here as it is traditionally answered in private derivative litigation, then Article III standing and subject-matter jurisdiction both exist in this case.[7]

---

[6] Last year the Supreme Court revived a suit by ERISA participants, apparently suing derivatively for their plan, without detecting any standing or jurisdictional obstacle there. *Cunningham* v. *Cornell Univ.*, 604 U.S. 693 (2025); *compare Thole* v. *U. S. Bank N.A.*, 590 U.S. 538, 547 (2020) ("There is no ERISA exception to Article III.").

[7] The Second Circuit has disagreed. *Bates on behalf of United States* v. *Trump*, No. 21-1533, 2022 WL 453397 (2d Cir. Feb. 15, 2022), *cert. denied sub nom. Bates* v. *Trump*, 142 S. Ct. 2872 (2022) (No. 21-1389). That said, one individual plaintiff may "singlehandedly generate[ ] a circuit split." *Acheson Hotels, LLC* v. *Laufer*, 601 U.S. 1, 3 (2023).

## II.    Despite 28 U.S.C. §516, This Action May Proceed Derivatively.

On behalf of Defendants, DOJ may argue that this action is barred by a statute,

28 U.S.C. §516.  But any argument from §516 would be incorrect here, for several reasons.[8]

### A.    Derivative actions have developed for centuries in English and American courts of equity.

First, the derivative action is an equitable remedy that originated three centuries ago.

An English case from 1742 presaged concepts that American courts of equity developed.

In *Charitable Corporation* v. *Sutton*, 26 Eng. Rep. 642, 2 Atk. Rep. 401 (Ch. 1742),

a company sued its "committee-men" (directors), seeking their removal and an accounting.

Lord Chancellor Hardwicke allowed the bill because courts of equity have power to resolve

entities' claims against their insiders, lest "intolerable grievance[s]" ensue:

> I will never determine that a court of equity cannot lay hold of every such breach of trust.  I will never determine that frauds of this kind are out of the reach of courts of law or equity; for an intolerable grievance would follow from such a determination.

2 Atk. Rep. at 406.

On this English foundation, American courts developed derivative actions.  *See Urdan*

v. *WR Cap. Partners, LLC*, No. CV 2018-0343-JTL, 2019 WL 3891720, *9 (Del. Ch.

Aug. 19, 2019) (tracing history), *aff'd*, 244 A.3d 668 (Del. 2020).

---

[8] Such an argument, if made by DOJ on behalf of these Defendants, might also be improper. In private derivative actions, the entity that owns the claim, but will not sue its own officers, is subject to the corporate-neutrality rule, under which the entity must take a neutral position. *See*, *e.g.*, 3 James D. Cox & Thomas L. Hazen, Law of Corporations §15:17 (3d ed. 2018) ("The corporation is commonly referred to as a 'nominal' defendant.  In general, it is required to adopt a neutral or passive role, with only a limited power to defend itself....  The corporation need not file an answer to the complaint or take any steps in the proceedings.") (footnotes & citations omitted); *accord*, 13 William Meade Fletcher et al., Fletcher Cyclopedia of Law of Corporations § 5997 (2018).

At the forefront were New York courts.  In 1817 Chancellor Kent foresaw a complaint "on the part of stockholders, of misconduct," and noted that "persons who… exercise corporate powers, may, in their character of trustees, be accountable to this Court for a fraudulent breach of trust," calling this a "plain and ordinary head of equity" as received from England.  *Att'y Gen.* v. *Utica Ins. Co.*, 2 Johns Ch. 371, 389, 390 (N.Y. Ch. 1817).[9]

In 1832 a New York court allowed stockholders to sue derivatively.  *Robinson* v. *Smith*, 3 Paige Ch. 222 (N.Y. Ch. 1832).  Chancellor Walworth held that the distinction between a charitable corporation and a joint-stock corporation (then fairly new) made no difference: "[N]o injury [that] the stockholders may sustain by a fraudulent breach of trust can, upon the general principles of equity, be suffered to pass without a remedy."  *Id*. at 232.

Therefore the stockholders could sue when the corporation would not:

> [A]s this court never permits a wrong to go unredressed merely for the sake of form, if it appeared that the directors of the corporation refused to prosecute by collusion with those who had made themselves answerable by their negligence or fraud, or if the corporation was still under the control of those who must be made the defendants in the suit, the stockholders, who are the real parties in interest, would be permitted to file a bill in their own names…

*Id*. at 233; *see also Marbury* v. *Madison*, 5 U.S. (1 Cranch) 137, 147 (1803) ("[E]very right, when withheld, must have a remedy, and every injury its proper redress.") (citing 3 Blackstone Commentaries 109); *Ashwander* v. *Tennessee Valley Auth.*, 297 U.S. 288, 319 (1936) ("To entitle the [derivative] complainants to equitable relief, in the absence of an adequate legal remedy, it is enough for them to show the breach of trust or duty involved in the injurious and illegal action.").

---

[9] "Chancery takes jurisdiction over 'fiduciary' relationships because equity, not law, is the source of the right."  *McMahon* v. *New Castle Assocs.*, 532 A.2d 601, 604 (Del. Ch. 1987).

In 1855 the United States Supreme Court recognized derivative remedies:

> It is now no longer doubted, either in England or the United States, that courts of equity, in both, have a jurisdiction over corporations at the instance of one or more of their members, to apply preventive remedies.

*Dodge* v. *Woolsey*, 59 U.S. (18 How.) 331, 341 (1855) (allowing shareholder suit against directors).  The Court noted that "[T]he circumstances of each case must determine the jurisdiction of a court of equity to give the relief sought."  *Id*. at 344.

Thus corporate derivative remedies are equitable extensions, to for-profit entities, of charitable-corporation principles that date back to the 1700s.  *See Robinson*, 3 Paige Ch. at 232 ("[S]ince the introduction of joint stock corporations... the principles which were formerly applied to charitable corporations in England, may be very appropriately extended to such companies here.").  So the derivative remedy has "founding-era antecedent[s]"—the historical "pedigree" that the Supreme Court requires.  *Trump* v. *CASA, Inc.*, 606 U.S. 831, 846 (2025).

### B.    The text of §516 does not mention, much less bar, derivative remedies on behalf of the United States.

The equitable nature of the derivative remedy has key implications here.

This is so because, "to properly restrict a court's equitable power, a statute must do so plainly and unequivocally."  *In re Murray Energy Corp.*, 788 F.3d 330, 337 (D.C. Cir. 2015) (Henderson, J., concurring).  "Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied."  *Weinberger* v. *Romero-Barcelo*, 456 U.S. 305, 313 (1982); *see also Califano* v. *Yamasaki*, 442 U.S. 682, 705 (1979) ("Absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction.").

Thus, in this Circuit, "[a]s a general matter, courts retain equitable powers 'unless Congress has expressly restricted their exercise.'" *Center for Biological Diversity* v. *EPA*, 56 F.4th 55, 71 (D.C. Cir. 2022) (quoting *Cobell* v. *Norton*, 240 F.3d 1081, 1108 (D.C. Cir. 2011)); *but see id*. at 82 (Rao, J., dissenting in part) (quoting *McQuiggin* v. *Perkins*, 569 U.S. 383, 397 (2013); arguing that courts should not "construe a statute to displace courts' *traditional* equitable authority absent the clearest command"; italicizing "traditional").

Here, §516 contains no command at all, much less the clearest command, with respect to an equitable remedy of derivative standing on behalf of the United States.  It provides:

> Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General.  [28 U.S.C. §516.]

Instead of barring derivative claims against federal officers, §516 largely allocates litigation authority within the Executive Branch.  *United States* v. *Mattson*, 600 F.2d 1295, 1297 n.1 (9th Cir. 1979) (stating that § 516 "serves merely as a housekeeping [sic] provision").  Courts also caution that §516 "must be narrowly construed."  *Case, Inc.* v. *United States*, 88 F.3d 1004, 1011 (Fed. Cir. 1996); *accord Hughes Aircraft Co.* v. *United States*, 534 F.2d 889, 901 (Ct. Cl. 1976) (stating that DOJ's powers under 28 U.S.C. §§516–20, "because so broadly inclusive, must be narrowly construed").

Indeed, when Bates first tried to sue derivatively on behalf of the United States, DOJ argued that "Congress has never *contemplated* or authorized such 'derivative' actions against [sic] the United States."  (Brief of United States as Appellee, Doc. 381 (Oct. 7, 2021), in *Bates derivatively on behalf of the United States* v. *Trump*, No. 21-1533 (2d Cir.) (italics added).

If that is true, then §516 reflects no legislative intent as to such derivative actions.

16

#### C.    Section 516 is not jurisdictional and is otherwise ambiguous.

Perhaps it is no wonder that as applied here, §516 is deeply ambiguous.

The statute opens with an exception—"[e]xcept as otherwise authorized by law."  But that phrase is not jurisdictional.  *See Xiulu Ruan* v. *United States*, 597 U.S. 450, 460 (2022) ("Nor is the "except as authorized [by this subchapter]' clause a jurisdictional provision…") (construing 21 U.S.C. §841) (bracketed phrase added).  Instead, §516 is claim-processing. *Riley* v. *Bondi*, 606 U.S. 259, 274 (2025) (holding that, absent "exceedingly strong signal," statute is not jurisdictional); *Harrow* v. *Dep't of Defense*, 601 U.S. 480, 486 (2024) (holding that Federal Circuit jurisdiction not ousted by "little phrases that can mean a raft of things").

The statute in *Riley* did not convey any exceedingly strong signal due to its text and placement.  Its text did not direct courts.  606 U.S. at 274.  Its placement—in a section that had nothing to do with jurisdiction—also prevented it from constraining judicial power.  *Id*.

Like the *Riley* statute, §516 does not direct courts.  Section 516 reserves the conduct of litigation to the Attorney General—directing the Executive, not the Judiciary.  Section 516 is placed nonjurisdictionally, in part of Title 28 that establishes DOJ as an "executive department," 28 U.S.C. §50, and in a chapter that sets up the Attorney General's office.

So §516 is a nonjurisdictional, claim-processing rule.  It therefore may have equitable exceptions, including derivative standing.

Aside from its nonjurisdicationality, the opening exception is ambiguous.  Does "law" mean law as opposed to equity?  Or does the authorizing "law" include decisional, caselaw in equity?  The text doesn't say.  But if Congress had intended exceptions only for statutes, then Congress could have used the phrase "Act of Congress."  *Compare* 28 U.S.C. §1345 ("*Except*

17

*as otherwise provided by Act of Congress*, the district courts shall have original jurisdiction of all civil actions... suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue *by Act of Congress*.") (italics added).

Moreover, Congress has used the word "law" in nearby provisions expansively. *See, e.g.*, 28 U.S.C. §505 (requiring President to appoint Solicitor General "learned in the law"); 28 U.S.C. §511 ("The Attorney General shall give his advice and opinion on questions of law when required by the President."); 28 U.S.C. §512 ("questions of law").

Indeed, the word "law" encompasses more than statutes. Black's Law Dictionary 795 (5th ed. 1979) (defining "law," in "generic sense," to mean "rules of action or conduct prescribed by controlling authority, and having binding legal force" or "which must be obeyed"). Thus "law" may include administrative regulations.[10] And cases: for courts "presume that Congress is aware of the law (including judicial precedent) relevant to legislation it enacts." *Boaz* v. *FedEx Cust'r Info. Servs.*, 725 F.3d 603, 607 (6th Cir. 2013).[11]

Furthermore, §516 does not "empower[ ] the Attorney General to engage in or authorize unlawful acts." *Executive Business Media, Inc.* v. *U.S. Dep't of Defense*, 3 F.3d 759, 761 (4th Cir. 1993). Section 516 may confer "absolute authority to pursue legitimate objectives," but that authority "stops at the walls of illegality" under other law. *Id*. at 762.

---

[10] *United States* v. *Mitchell*, 39 F.3d 465, 468 (4th Cir. 1994) ("[T]he plain meaning of 'law' includes regulations having the force and effect of law."); *see United States* v. *594,464 Pounds of Salmon*, 871 F.2d 824, 826 (9th Cir. 1989) (stating that "law" is "fairly broad").

[11] Section 516 has dozens of statutory exceptions. "As of 1978, some 31 Executive Branch and independent agencies were authorized to conduct at least some of their own litigation." T. Olson, *The Attorney General's Role as Chief Litigator for the United States*, 6 O.L.C. 47, 62 (Jan. 4, 1982) (citing Griffin Bell, *The Attorney General: The Federal Government's Chief Lawyer and Chief Litigator, or One Among Many?*, 46 Fordham L. Rev. 1049, 1057 (1978)).

18

Thus the opening phrase in §516 is not clear. Instead of being displaced, equity gives exceptions. Caselaw may create exceptions, as may ethics rules (*see* Part III, *infra*).

Another ambiguity lies in the provision's main clause, which reserves to DOJ the "conduct" of litigation "in which the United States... or officer thereof" is a party or is interested. 28 U.S.C. §516. This language makes no provision whatsoever for cases in which the United States must sue its own officer. So—at least in cases like this one—§516 cannot mean exactly what it says. Even the initiation of, much less all "conduct" of, a litigation captioned *United States* v. *Officer Thereof* cannot be reserved entirely, for both sides, to DOJ.

### D.     Section 516 should not be construed to produce absurd results.

In construing statutes, courts try to avoid absurd results. In this Circuit, a statutory result is absurd "if it defies rationality by rendering a statute nonsensical." *United States* v. *Cook*, 594 F.3d 883, 891 (D.C. Cir. 2010) (cleaned up). *Cook* creates a "high threshold," *id.*, for absurd results, but even that high threshold would be met here if §516 were read to bar this derivative action against federal officials. On that reading, DOJ would labor under acute conflicts of interest and (on a unitary view) the Executive would have to sue itself.

DOJ usually represents the president and litigates in his or her stead. *See Harlow* v. *Fitzgerald*, 457 U.S. 800, 807 (1982); 28 CFR §50.15. In normal circumstances, "whenever the United States, its agencies, or officers are involved in litigation, an attorney-client relationship exists between DOJ attorneys and an affected federal agency and its officers." *Blue Lake Forest Prod., Inc.* v. *United States*, 75 Fed. Cl. 779, 792 (2007) (citing §516).

Absent any derivative remedy, a civil suit against Trump, the sitting president, would have to be brought or authorized by DOJ. But it is a "long-recognized general principle that

19

no person may sue himself." *United States* v. *I.C.C.*, 337 U.S. 426, 430 (1949); *Russell* v. *Liberty Ins. Underwriters, Inc.*, 950 F.3d 997, 1000 (8th Cir. 2020) ("[A] party cannot be both plaintiff and defendant in the same case."); *Defense Supplies Corp.* v. *U.S. Lines Co.*, 148 F.2d 311, 312–13 (2d Cir. 1945) ("In private litigation the plaintiff and defendant cannot be the same.  For, in that event, there is no real case or controversy.").  This principle applies to the United States.  *Luckenbach Steamship Co.* v. *United States*, 315 F.2d 598, 604 (2d Cir. 1963) (Friendly, J.) ("[T]he Government, no more than any other person, can sue itself.").[12]

In sum, equity may be circumscribed by a clear statute, but 28 U.S.C. §516 does not clearly displace caselaw and court rules that have permitted derivative actions for centuries.  Besides, if applied here, §516 would intensify DOJ's conflict of interest and would require the Executive to sue itself.  The Court should not construe §516 to affect this action.

### III.    The Court Should Disqualify DOJ and Its Attorneys from Defending Trump, Bondi, and Pirro Against Claims That Belong to the United States.

If the Court has jurisdiction (it does, *see* Part I, *supra*), and if Bates may bring this case derivatively (he may, *see* Part II, *supra*), then this Motion becomes more focused.

A motion to disqualify counsel is committed to the sound discretion of the district court.  *Palumbo* v. *Tele-Commc'ns, Inc.*, 157 F.R.D. 129, 131 (D.D.C. 1994); *see also Groper* v. *Taff*, 717 F.2d 1415, 1418 (D.C. Cir. 1983) ("[T]he district court bears responsibility for supervising the members of its bar and its exercise of this supervisory duty is discretionary.").  "In addressing a motion to disqualify, a court must consider two questions in turn: first,

---

[12] No statute pursues any single purpose at all costs.  *Medina* v. *Planned Parenthood South Atlantic*, 606 U.S. 357, 368 (2025).  Here, §516 encourages the Executive to speak with one voice.  Yet the premise of derivative actions is that officers who should speak and sue for an entity may fall silent for the wrong reasons.  That is a cost that equity refuses to pay.

20

whether a violation of an applicable Rule of Professional Conduct has occurred or is occurring, and if so, whether such violation provides sufficient grounds for disqualification." *Headfirst Baseball LLC* v. *Elwood*, 999 F. Supp. 2d 199, 204 (D.D.C. 2013).

Here, first, a violation of an applicable Rule of Professional Conduct is occurring because the United States Department of Justice is defending Trump, Bondi, and Pirro *against claims that belong to the United States*. That defense is highly improper.

Under the ethics rules that apply in this Court, "[a] lawyer employed or retained by an organization represents the organization." D.C. Rule Prof'l Conduct 1.13(a). This rule "encompasses the representation of governmental organizations." *Id*. cmt. [8]. And specifically as to derivative actions, "if the claim involves serious charges of wrongdoing by those in control of the organization, [then] a conflict may arise between the lawyer's duty to the organization and the lawyer's relationship" with the people who control the organization. *Id*. cmt. [13]. "In those circumstances, Rule 1.7 governs." *Id*.[13]

Rule 1.7(b) in turn provides in part that "a lawyer shall not represent a client with respect to a matter if: (1) That matter involves a specific party or parties and a position to be taken by that client in that matter is adverse to a position taken… by another client in the same matter." D.C. Rule Prof'l Conduct 1.7(b).

Bates is suing Defendants here on behalf of DOJ's client, the United States. He alleges serious wrongdoing, including 32 violations of criminal law, a subsequent cover-up, and repeated misuse of DOJ's prosecutorial powers. Therefore DOJ's representations of

---

[13] DOJ's representations here may implicate other ethical Rules as well. *See, e.g.*, D.C. Rule Prof'l Conduct 1.8(g) (forbidding lawyers from "[m]ak[ing] an agreement prospectively limiting the lawyer's liability to a client for malpractice"). Here, DOJ must not be heard to argue that the United States somehow cannot sue its own lawyers for legal malpractice.

21

Defendants violate Rule 1.7(b)(1).  And even if these conflicts were waivable—a novel proposition—DOJ has given no indication of any informed-consent waiver.

The violations provide sufficient grounds for disqualification because, in defending Trump, Bondi, and Pirro against claims brought derivatively on behalf of the United States, DOJ is violating the corporate-neutrality rule.  Under this general rule, "a corporation may not participate in a derivative action on the merits."  15 Cyc. Fed. Proc. §78:39 (3d ed.).

To be sure, the United States should be the Nominal Defendant here because the claim-owning entity is a necessary party to a derivative action.  *See Howard* v. *Goodman*, No. 20-CV-2187 (DLF), 2021 WL 4061143, at \*5 (D.D.C. Sept. 7, 2021) (requiring joinder of LLC because plaintiff "allege[d] derivative claims on behalf of" LLC and "requested relief would flow to" LLC); *accord, Meyer* v. *Fleming*, 327 U.S. 161, 167 (1946).

After joinder, though, the nominal defendant—if it chooses to remain the nominal defendant, and not to be realigned as a plaintiff—may do very little.  *Cotter on behalf of Reading Int'l, Inc.* v. *Kane*, 136 Nev. 559, 563 (2020) (Nevada law) ("In line with the majority of jurisdictions, we conclude that a nominal corporate defendant cannot oppose a derivative action on the merits."); *In re Internet Navigator Inc.*, 293 B.R. 198, 206 (Bankr. N.D. Iowa 2003) (Iowa law) ("The corporation... should take a strictly neutral part.").

This neutrality rule is supported by an "overwhelming weight of authority."  *Sobba* v. *Elmen*, 462 F. Supp. 2d 944, 947 (E.D. Ark. 2006) (Arkansas law).

For all these reasons, the Court should grant this Motion and should disqualify DOJ and its attorneys from defending Trump, Pirro, and Bondi in this derivative action, which is brought against Trump, Pirro, and Bondi on behalf of the United States.

22

**CONCLUSION**

Third-party standing "allow[s] a plaintiff to assert the rights of another person when the plaintiff has a close relationship with the person who possesses the right and there is a hindrance to the possessor's ability to protect his own interests." *Hippocratic Med.*, 602 U.S. at 397 (Thomas, J., concurring) (cleaned up). If a relationship-and-hindrance test applies here, it is met. Close relationships exist. Like ERISA-plan participants, taxpayers pay money and receive benefits. Like shareholders, citizens own the Republic and elect its officers. The requisite hindrance also exists, given demand futility. The United States must be protected from high-ranking executive officers who breach their fiduciary and professional duties.

For all these reasons, Plaintiff respectfully requests that the Court grant this Motion.

Exercising equity as tested by time, the Court should hold that presidential wrongs may now have a powerful remedy: the traditional derivative suit.[14]

Dated: New York, New York
Memorial Day, May 25, 2026.

Respectfully submitted,

*/s/ Jeremy Bates*

_____
Jeremy Bates (D.D.C. Bar ID NY0579)
(not admitted to the District of Columbia Bar)
21 West Street Apt. 21J
New York, New York 10006
917-626-2473
jeremybates3@gmail.com
*Plaintiff* pro Se,
 *derivatively on behalf of*
 *the United States of America*

---

[14] The Court may also wish to certify the standing and statutory questions for interlocutory appeal, so that federal officers nationwide will know with certainty, going forward, whether misconduct may give rise to standing to bring suit derivatively, on behalf of the United States.